

1  LINGEL H. WINTERS, ESQ. (SBN 37759)
   LAW OFFICES OF LINGEL H. WINTERS
2  A PROFESSIONAL CORPORATION
   One Maritime Plaza, Suite 400
3  San Francisco, CA  94111
   Telephone:    (415) 398-2941
4  Facsimile:    (415) 393-9887

5  Attorneys for Plaintiff and the Putative Class

6

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10

11  EMW, INC., on behalf of itself and all others      Case No:
    similarly situated,
12                                                      CLASS ACTION COMPLAINT
                    Plaintiff,
13                                                      JURY TRIAL DEMANDED
            vs.
14
    LG.PHILIPS LCD CO., LTD.; LG. PHILIPS
15  LCD) AMERICA, INC.; SAMSUNG
    ELECTRONICS CO. LTD.; SAMSUNG
16  SEMICONDUCTOR, INC.; SHARP
    CORPORATION; SHARP ELECTRONICS
17  CORPORATION; TOSHIBA
    CORPORATION; TOSHIBA MATSUSHITA
18  DISPLAY TECHNOLOGY CO., LTD.;
    HITACHI LTD.; HITACHI DISPLAYS, LTD.;
19  HITACHI AMERICA LTD.; HITACHI
    ELECTRONIC DEVICES (USA), INC.;
20  EPSON IMAGING DEVICES
    CORPORATION; NEC CORPORATION;
21  NEC ELECTRONICS CORPORATION; NEC
    LCD TECHNOLOGIES, LTD.; NEC
22  ELECTRONICS AMERICA, INC.; IDT
    INTERNATIONAL LTD.; AU OPTRONICS;
23  AU OPTRONICS CORPORATION
    AMERICA; CMO JAPAN CO., LTD.; CHI
24  MEI OPTOELECTRONICS; CHI MEI
    OPTOELECTRONICS USA, INC.;
25  CHUNGHWA PICTURE TUBES LTD.; and
    HANNSTAR DISPLAY CORPORATION,,
26
                    Defendants.
27

28

1    Plaintiff, by its attorneys, brings this civil action for damages and injunctive relief on

2    behalf of himself and all others similarly situated against the above-named Defendants, demands

3    a trial by jury, complains and alleges as follows:

4    ### JURISDICTION AND VENUE

5    1.    This complaint is filed under Section 16 of the Clayton Act (15 U.S.C. §26) for

6    injunctive relief for violations of Section 1 of the Sherman Act (15 U.S.C. §1), and to recover

7    damages under state antitrust and consumer protection laws, and to recover the costs of suit,

8    including reasonable attorneys' fees, for the injuries that Plaintiff and all others similarly situated

9    sustained as a result of the Defendants' violations of those laws.

10    2.    The Court has jurisdiction over the federal claim under 28 U.S.C. §§1331 and

11    1337. The Court has jurisdiction over the state law claims under 28 U.S.C. § 1367 because those

12    claims are so related to the federal claim that they form part of the same case or controversy. The

13    Court also has jurisdiction over the state law claims under 28 U.S.C. §1332 because the amount

14    in controversy for the Class exceeds $5,000,000, and there are members of the Class who are

15    citizens of a different state than the Defendants.

16    3.    Venue is proper in this District under 15 U.S.C. §22 and 28 U.S.C. §1391 because

17    Defendants reside or transact business, or are found within this District, and a substantial part of

18    the events giving rise to the claims arose in this District.

19    4.    The activities of the Defendants and their co-conspirators, as described herein,

20    were within the flow of, were intended to, and did have a substantial effect on the foreign and

21    interstate commerce of the United States.

22    ### DEFINITIONS

23    5.    As used herein, the term "TFT-LCD Products" means Thin Film Transistor

24    Liquid Crystal Display products, including such products as are used in televisions, computer

25    monitors (both desktop and notebook), personal digital assistants, mobile phones and other

26    devices.

27    6.    As used herein, the term "Class Period" means the time period extending from at

28    least January 1, 1998 through at least December 31, 2005.

CLASS ACTION COMPLAINT

## THE PARTIES

### The Plaintiff

7.　Plaintiff EMW, Inc., a California resident, indirectly purchased TFT-LCD Panels from one or more of the Defendants during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct. The Defendants

8.　Defendant LG.Philips LCD Co., Ltd. ("LG.Philips") is a Korean entity with its principal place of business located at 20 Yoido-dong, Youngdungpo-gu, Seoul 150-721, Republic of Korea. LG.Philips is a joint venture created in 1999 by Philips Electronics NV and LG LCD. LG.Philips maintains offices within this District in San Jose, California. In its Form 6-K filed on December 11, 2006 with the United States Securities and Exchange Commission ("SEC"), LG.Philips stated that it "is a leading manufacturer and supplier of thin-film transistor liquid crystal display (TFT-LCD) panels"; that it "manufactures TFT-LCD panels in a wide range of sizes and specifications for use in TVs, monitors, notebook PCs, and various applications"; and that it "currently operates seven fabrication facilities and four back-end assembly facilities in Korea, China and Poland." (<http://www.lgphilips-lcd.com/homeContain/jsp/eng/inv/inv200Jj_e.jsp> .) During the Class Period, LG.Philips manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

9.　Defendant LG.Philips LCD America, Inc. is an entity organized under the laws of California with its principal place of business located in this District at 150 East Brokaw Rd., San Jose, CA 95112. During the Class Period, LG.Philips LCD America, Inc. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

10.　Defendant Samsung Electronics Co. Ltd. is a business entity organized under the laws of South Korea, with its principal place of business at Samsung Main Building 250-2 ga, Taepyung-ro Chung-gu, Seoul, Korea. During the Class Period, Samsung manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

11.　Defendant Samsung Semiconductor, Inc. is a business entity organized under the laws of California, with its principal place of business at 3655 North First Street, San Jose,

1   California 95134. Samsung Semiconductor, Inc. is a wholly owned and controlled subsidiary of

2   Defendant Samsung Electronics Co., Ltd. (collectively referred to as "Samsung"). During the

3   Class Period, Samsung Semiconductor, Inc. sold and distributed TFT-LCD Products to

4   customers throughout the United States.

5           12.     Defendant Sharp Corporation is a business entity organized under the laws of

6   Japan, with its principal place of business at 22-22 Nagaike-cho, Abeno-ku, Osaka 545-8522,

7   Japan. During the Class Period, Sharp Corporation manufactured, sold and distributed TFT-LCD

8   Products to customers throughout the United States.

9           13.         Defendant Sharp Electronics Corporation is a wholly owned and

10   controlled subsidiary of Defendant Sharp Corporation, with its principal place of business at

11   Sharp Plaza, Mahwah, New Jersey 07430. During the Class Period, Sharp Electronics

12   Corporation manufactured, sold and distributed TFT-LCD Products to customers throughout the

13   United States. Defendants Sharp Corporation and Sharp Electronics Corporation are referred to

14   collectively herein as "Sharp."

15          14.     Defendant Toshiba Corporation is a business entity organized under the laws of

16   Japan, with its principal place of business at 1-1, Shibaura 1-chome, Minato-ku, Tokyo 105-

17   8001, Japan. During the Class Period, Toshiba Corporation manufactured, sold and distributed

18   TFT-LCD Products to customers throughout the United States.

19          15.     Defendant Toshiba Matsushita Display Technology Co., Ltd. is a business entity

20   organized under the laws of Japan with its principal place of business located at Rivage

21   Shinagawa, 1-8, Konan 4-chome, Minato-ku, Tokyo 108-0075, Japan. Defendant Toshiba

22   Corporation states on its website the following regarding Toshiba Matsushita Technology Co.,

23   Ltd.: "[a]dvanced capabilities in LCD and organic LED displays drive product development and

24   production and enhanced sales operations with a truly worldwide reach. The company is the

25   undisputed leader in low temperature polysilicon TFT technology, the preferred display for

26   mobile devices and the underpinning technology for organic LED, the next generation display-

27   of-choice for a range of products, including thin profile televisions. These leading-edge

28   capabilities support us in providing high value added displays that are light and thin, consume

CLASS ACTION COMPLAINT

1    little power and offer excellent image quality."

2    (<http://www.toshiba.co.jp/worldwide/about/company/tmd.htm> .) During the Class Period,

3    Toshiba Matsushita Display Technology Co., Ltd. manufactured, sold and distributed TFT-LCD

4    Products to customers throughout the United States.

5        16.    Defendants Toshiba Corporation and Toshiba Matsushita Display Technology

6    Co., Ltd. are referred to collectively herein as "Toshiba."

7        17.    Defendant Hitachi Ltd. is a business entity organized under the laws of Japan,

8    with its principal place of business at 6-1 Marunouchi Center Building 13F, Chiyoda-ku,

9    Tokyo,100-8220, Japan. During the Class Period, Hitachi Ltd. manufactured, sold and

10   distributed TFT-LCD Products to customers throughout the United States.

11       18.    Defendant Hitachi Displays, Ltd. is a business entity organized under the laws of

12   Japan, with its principal place of business located at AKS Bldg. 5F, 6-2 Kanda Neribei-cho 3,

13   Chiyoda-ku, Tokyo, 101-0022, Japan. On its website, Hitachi Displays, Ltd. states that "[w]e

14   provide the world's best products, quality and service to meet the needs of the digital age. These

15   include Hitachi's proprietary Advanced-Super IPS LCDs offering clear pictures from any angle;

16   large-sized LCD modules for TVs using our original moving picture technology; small-sized

17   LCD modules for information terminal devices such as cellular phones and digital cameras with

18   low power consumption and high resolution picture realized by LTPS (low-temperature poly-

19   silicon) technology; and middle-sized colorful LCD modules for amusement devices. We also

20   produce components such as LCD drivers, color filters and back-lights." (<http://www.hitachi-

21   displays.com/en/company/ work/ index.html> .) During the Class Period, Hitachi Displays, Ltd.

22   manufactured, sold and distributed TFT-LCD Products to customers throughout the United

23   States.

24       19.    Defendant Hitachi America Ltd. is a wholly owned and controlled subsidiary of

25   Defendant Hitachi Ltd. Hitachi America Ltd. is a business entity organized under the laws of

26   New York, with its principal place of business at 50 Prospect Avenue, Tarrytown, New York

27   10591. During the Class Period, Hitachi America Ltd. manufactured, sold and distributed TFT-

28   LCD Products to customers throughout the United States.

1    20.    Defendant Hitachi Electronic Devices (USA), Inc. is a wholly owned and

2 controlled subsidiary of Defendant Hitachi Ltd., and is a business entity with its principal place

3 of business located at 575 Mauldin Road Greenville, South Carolina 29607. During the Class

4 Period, Hitachi Electronic Devices (USA), Inc. manufactured, sold and distributed TFT-LCD

5 Products to customers throughout the United States.

6    21.    Defendants Hitachi Ltd., Hitachi Displays, Ltd., Hitachi America Ltd. and Hitachi

7 Electronic Devices (USA), Inc. are referred to collectively herein as "Hitachi."

8    22.    Defendant Epson Imaging Devices Corporation ("Epson Imaging") is a Japanese

9 company with its principal place of business at 6925 Toyoshina Tazawa, Azumino-shi, Nagano,

10 Japan. According to its website, Epson Imaging Devices Corporation, formerly known as Sanyo

11 Epson Imaging Devices Corporation, was originally established as a joint venture between Seiko

12 Epson Corporation and Sanyo Electric Co., Ltd. The company commenced operations in October

13 2004 and on December 28, 2006 changed its name upon becoming a wholly owned Epson

14 subsidiary. (<http://www.epson¬imaging.com/e/company/ milestones/index_seid.html> .)

15 During the Class Period, Epson Imaging manufactured, sold and distributed TFT-LCD Products

16 to customers throughout the United States.

17    23.    Defendant NEC Corporation is a business entity organized under the laws of

18 Japan with its principal place of business located at 7-1, Shiba 5-chome, Minato-ku, Tokyo 108-

19 8001, Japan. During the Class Period, NEC Corporation manufactured, sold and distributed TFT-

20 LCD Products to customers throughout the United States.

21    24.    Defendant NEC Electronics Corporation is a business entity organized under the

22 laws of Japan with its principal place of business located at 1753 Shimonumabe Nakahara-Ku,

23 Kawasaki, Kanagawa 211-8668, Japan. During the Class Period, NEC Electronics Corporation

24 manufactured, sold·and distributed TFT-LCD Products to customers throughout the United

25 States.

26    25.    Defendant NEC LCD Technologies, Ltd. is a wholly owned and controlled

27 subsidiary of Defendant NEC Corporation, and is an entity organized under the laws of Japan

28 with its principal place of business located at 1753 Shimonumabe, Nakahara-Ku, Kawasaki,

1   Kanagawa 211-8666, Japan. During the Class Period, NEC LCD Technologies, Ltd.

2   manufactured, sold and distributed TFT-LCD Products to customers throughout the United

3   States.

4       26.    Defendant NEC Electronics America, Inc. is a wholly owned and controlled

5   subsidiary of Defendant NEC Electronics Corporation, with its principal place of business at

6   2880 Scott Boulevard, Santa Clara, California 95050, and its manufacturing plant in Roseville,

7   California. During the Class Period, NEC manufactured, sold and distributed TFT-LCD Products

8   to customers throughout the United States.

9       27.    Defendants NEC Corporation, NEC Electronics Corporation, NEC LCD

10  Technologies, Ltd., and NEC Electronics America, Inc. are referred to collectively herein as

11  "NEC."

12      28.    Defendant IDT International Ltd. is an entity organized under the laws of

13  Bermuda with its principal place of business located at Block C, 9th Floor, Kaiser Estate Phase

14  1, 41 Man Yue Street, Hunghom, Kowloon, Hong Kong, China. During the Class Period, IDT

15  International Ltd. manufactured, sold and distributed TFT-LCD Products to customers

16  throughout the United States.

17      29.    Defendant AU Optronics is Taiwan's largest manufacturer of TFT¬LCD Products

18  and has its corporate headquarters at No. 1, Li-Hsin Rd. 2, Hsinchu Science Park, Hsinchu

19  30078, Taiwan. During the Class Period, AU Optronics manufactured, sold and distributed TFT-

20  LCD Products to customers throughout the United States.

21      30.    Defendant AU Optronics Corporation America ("AUOCA") is a wholly owned

22  and controlled subsidiary of defendant AU Optronics and has its corporate headquarters at 9720

23  Cypresswood Drive, Suite 241, Houston, Texas 77070. AUOCA has a facility located in San

24  Diego, California. During the Class Period, AUOCA manufactured, sold and distributed TFT-

25  LCD Products to customers throughout the United States.

26      31.    Defendant CMO Japan Co., Ltd. ("CMO Japan"), formerly known as

27  International Display Technology Co., Ltd., is a leading manufacturer of TFT-LCD Products and

28  has its global headquarters at Nansei-Yaesu Bldg. 4F, 2-2-10 Yaesu, Chuo-ku, Tokyo 104-0028,

1  Japan. During the Class Period, CMO Japan manufactured, sold and distributed TFT-LCD

2  Products to customers throughout the United States.

3      32.    Defendant Chi Mei Optoelectronics Corporation is a leading manufacturer of

4  TFT-LCD Products and has its global headquarters at No. 3, Sec. 1, Hi'anshi Rd., Southern

5  Taiwan Science Park, Sinshih Township, Tainan County, 74147 Taiwan. Chi Mei

6  Optoelectronics Corporation is a wholly owned and controlled subsidiary of CMO Japan. During

7  the Class Period, Chi Mei Optoelectronics Corporation manufactured, sold and distributed TFT-

8  LCD Products to customers throughout the United States.

9      33.    Defendant Chi Mei Optoelectronics USA, Inc., formerly known as International

10  Display Technology USA, Inc., is a wholly owned and controlled subsidiary of CMO Japan and

11  has its corporate headquarters at 101 Metro Drive, Suite 510, San Jose, California 95110. During

12  the Class Period, Chi Mei Optoelectronics USA,.Inc. manufactured, sold and distributed TFT-

13  LCD Products to customers throughout the United States.

14      34.    Defendants CMO Japan Co., Ltd., Chi Mei Optoelectronics Corporation, and Chi

15  Mei Optoelectronics USA, Inc. are referred to collectively herein as "Chi Mei."

16      35.    Defendant Chunghwa Picture Tubes Ltd. ("Chunghwa") is a leading manufacturer

17  of TFT-LCD Products and has its global headquarters at 1127 Hopin Rd., Padeh City, Taoyuan,

18  Taiwan. During the Class Period, Chunghwa manufactured, sold and distributed TFT-LCD

19  Products to customers throughout the United States.

20      36.    Defendant HannStar Display Corporation ("HannStar") is a leading manufacturer

21  of TFT-LCD Products and has its headquarters at No. 480, Rueiguang Road, 12th Floor, Neihu

22  Chiu, Taipei 114, Taiwan. During the Class Period, HannStar manufactured, sold and distributed

23  TFT-LCD Products to customers throughout the United States.

24  **Co-Conspirators**

25      37.    Various others co-conspirators, presently unknown to Plaintiff, participated as co-

26  conspirators with the Defendants in the violations of law alleged in this Complaint and have

27  engaged in conduct and made statements in furtherance thereof.

28      38.    The acts charged in this Complaint have been done by Defendants and their co-

1  conspirators, or were authorized, ordered or done by their respective officers, agents, employees

2  or representatives while actively engaged in the management of each Defendant's business or

3  affairs.

4        39.     Each Defendant named herein acted as the agent or joint venturer of or for the

5  other Defendants with respect to the acts, violations and common course of conduct alleged

6  herein.

7                              **CLASS ACTION ALLEGATIONS**

8        40.     Plaintiff brings this suit as a class action pursuant to Rules 23(b)(2) and 23(b)(3)

9  of the Federal Rules of Civil Procedure, on behalf of himself and a Plaintiff Class ("the Class")

10  composed of and defined as follows:

> All persons and entities residing in the United States who, from
> January 1, 1998 through December 31, 2005, purchased TFT-LCD
> Products in the United States indirectly from the Defendants for
> their own use and not for resale. Specifically excluded from this
> Class are the Defendants; the officers, directors or employees of
> any Defendant; any entity in which any Defendant has a
> controlling interest; and any affiliate, legal representative, heir or
> assign of any Defendant. Also excluded are any federal, state or
> local governmental entities, any judicial officer presiding over this
> action and the members of his/her immediate family and judicial
> staff, and any juror assigned to this action.

41.     This action has been brought and may be properly maintained as a class action

pursuant to Rule 23 of the Federal Rules of Civil Procedure for the following 5 reasons:

a.      The Class is ascertainable and there is a well-defined community of

interest among the members of the Class;

b.      Plaintiff believes that the members of the Class number in the thousands,

based upon the nature of the trade and commerce involved and the number of indirect

purchasers of TFT-LCD Products, and therefore is sufficiently numerous that joinder of

all Class members is not practicable;

c.      Plaintiff's claims are typical of the claims of the members of the Class

because Plaintiff indirectly purchased TFT-LCD Products from one or more of the

Defendants or their co-conspirators, and therefore Plaintiff's claims arise from the same

CLASS ACTION COMPLAINT

1    common course of conduct giving rise to the claims of the members of the Class and the

2    relief sought is common to the Class;

3              d.      The following common questions of law or fact, among others, exist as to

4    the members of the Class:

5                      (1)      whether Defendants formed and operated a combination or

6    conspiracy to fix, raise, maintain or stabilize the prices of, or allocate the market

7    for, TFT-LCD Products;

8                      (2)      whether the combination or conspiracy caused TFT-LCD Products

9    prices to be higher than they would have been in the absence of Defendants'

10   conduct;

11                     (3)      the operative time period of Defendants' combination or

12   conspiracy;

13                     (4)      whether Defendants' conduct caused injury to the business or

14   property of Plaintiff and the members of the Class;

15                     (5)      the appropriate measure of the amount of damages suffered by the

16   Class;

17                     (6)      whether Defendants' conduct violates Section 1 of the Sherman

18   Act;

19                     (7)      whether Defendants' conduct violates Sections 16720 and 17200

20   of the California Business and Professions Code;

21                     (8)      whether Defendants' conduct violates the antitrust, unfair

22   competition, and consumer protection laws of the other states as alleged below;

23   and

24                     (9)      the appropriate nature of class-wide equitable relief.

25             e.      These and other questions of law or fact which are common to the

26   members of the Class predominate over any questions affecting only individual members

27   of the Class;

28             f.      After determination of the predominant common issues identified above, if

CLASS ACTION COMPLAINT

1    necessary or appropriate, the Class can be divided into logical and manageable

2    subclasses;

3          g.     Plaintiff will fairly and adequately protect the interests of the Class in that

4    Plaintiff has no interests that are antagonistic to other members of the Class and has

5    retained counsel competent and experienced in the prosecution of class actions and

6    antitrust litigation to represent himself and the Class;

7          h.     A class action is superior to other available methods for the fair and

8    efficient adjudication of this litigation since individual joinder of all damaged Class

9    members is impractical.  Because the damages suffered by individual Class members are

10    relatively small, given the expense and burden of individual prosecution of the claims

11    asserted in this litigation, it would not be feasible for Class members to redress the

12    wrongs done to them absent the availability of class action procedures.  Even if the Class

13    members could afford individual litigation, the court system could not. Further,

14    individual litigation presents the potential for inconsistent or contradictory judgments and

15    would greatly magnify the delay and expense to all parties and to the court system.

16    Therefore, the class action procedure presents greater facility of case management and

17    fewer difficulties and will provide the benefits of unitary adjudication, economy of scale

18    and comprehensive supervision by a single court;

19          i.     Defendants have acted, and refused to act, on grounds generally applicable

20    to the Class, thereby making appropriate final injunctive relief with respect to the Class

21    as a whole; and

22          j.     In the absence of a class action, Defendants would be unjustly enriched

23    because they would be able to retain the benefits and fruits of their wrongful conduct.

24         42.     The Claims in this case are also properly certifiable under the laws of 10 the State

25    of California, and of the other individual states identified below in the Fourth and 11 Fifth

26    Claims for Relief.

27                   **NATURE OF TRADE AND COMMERCE**

28         43.     Throughout the Class Period, Defendants and their co-conspirators 14 engaged in

1  the business of marketing and selling TFT-LCD Products throughout the United 15 States.

2      44.    As Defendant LG.Philips states on its website, "[t]he thin-film transistor liquid

3  crystal display (TFT-LCD) is a cutting-edge display, which screens picture information by

4  adjusting the amount of light permitted." (<http://www.lgphilips-

5  lcd.com/homeContain/jsp/eng/tech/tech210j_e.jsp> .) LG.Philips further states that "TFT 20 is a

6  circuit formed with semiconductor films on a thin glass substrate to control liquid 21 crystals.

7  This circuit plays a vital role in controlling each pixel, the basic unit of a picture 22 image. The

8  color filter displays a color image by coating the pixel (red, green and blue) on 23 a glass

9  substrate." *Id.*

10     45.    At the portion of its website entitled "How TFT-LCD Works," 25 Defendant

11  LG.Philips explains:

12         A pixel, the smallest unit to indicate a picture image, is formed by
           three sub-pixels consisting of red, green, and blue. The number of
13         pixels arranged in a display determines the resolution of the
           TFT¬LCD. TFT is composed of the data line (image signal
14         transfer) and gate line (TFT on/off signal transfer). TFT existing in
           each sub-pixel controls the voltage difference between the TFT
15         glass electrode and the color filter glass electrode in order to adjust
           the molecular array of liquid crystals. Such a change in the
16         molecule direction of liquid crystals alters the amount of light
           penetrating the liquid crystal layer. Consequently, the TFT-LCD
17         display shows picture image information.

18  (< http: //www.lgphilips-lcd.comlhomeConta in/jsp/eng/techltech210_01 j_e. jsp > .)

19     46.    The company describes some of the applications for TFT-LCD technology as

20  follows:

21         TFT-LCD technology has created a wide range of computer and
           consumer products that would have not been possible with
22         cathode-ray tubes (CRT). The flat and thin attributes of LCDs
           makes them ideal for mobile or portable applications. In addition,
23         LCDs can operate at low voltage levels and dissipate with low heat
           exposure. Initially, LCDs were incorporated into notebook
24         computers, similar in size and resolution to 12-14 inch CRT
           monitors. Through innovation, TFT-LCD engineers were able to
25         develop displays providing much higher resolution than CRTs, in
           addition to producing them in larger sizes.
26
           Today, TFT-LCDs are challenging CRT-based desktop computer
27         monitors. As a result, a wider range of mobile computing
           applications are now available. Engineers have found ways to
28         reduce weight, thickness, and the frame width of notebook

1   computer displays. New TFT process technologies make it
    possible to deliver more pixels per inch and allow even portable
2   computers to display more information than the latest CRT
    monitor. Such technology became available just as DVDs became
3   popular, so consumers can now get DVD players in very thin and
    light packages. Currently, a similar transformation is occurring
4   with next-generation cell phones and wireless networks.

5   (<http://www.lgphilips-lcd.com/homeContain/jsp/eng/tech/ tech210_02jsp> .)

6      47.    The market for TFT-LCD Products is huge. An October 10, 2006 article on the

7   age .com stated that "[m]anufacturers are expected to pump out 48.4 million LCDs for TVs this

8   year alone, up 70 percent over 2005, while flat-panel sales - most of those using LCD technology

9   - are expected to reach $US 88 billion this year and $US 100 billion in 2007, according to market

10  research company DisplaySearch."

11  (<http: //www. theage. com. au/news/home-theatre/they-are-building-it-but-will-lcd-

12  sales¬come/2006/ 10/09/ 1160246068541. html# > . )

13     48.    The market for the manufacture and sale of TFT-LCD Products is also conducive

14  to the type of collusive activity alleged here. That market is oligopolistic in nature. According to

15  data from iSuppli, in 2005, LG.Philips had 21.4% of the large TFT¬LCD panel global market

16  share, Samsung had 20.9%, AU Optronics had 14.5%, Chi Mei had 11.8%, and Chunghwa had

17  7.3%, while the remaining suppliers controlled 24.1%.

18  (<http://www.eetimes.com/showArticle.jhtml?articleID =177101936 > .) Samsung took over the

19  leading position in the industry in 2006. (<http://biz.yahoo.com/rb/061211/

20  lgphilips_investigation.html?.v=2 > .)

21     49.    Some of these companies are known antitrust violators. Samsung, for example,

22  was fined $300 million by the United States Department of Justice ("DOJ") in October of 2005

23  for participating in a conspiracy to fix prices for Dynamic Random Access Memory. It is also

24  under investigation by the DOJ (along with some of the other Defendants) for fixing prices of

25  Static Random Access Memory.

26     50.    The industry is also marked by a web of cross-licensing agreements that facilitate

27  collusion. AU Optronics, for example, entered into licensing arrangements with Sharp in 2005

28  and Samsung in 2006. Chi Mei has licensing arrangements with Sharp, AU Optronics,

1    Chunghwa, HannStar and Hitachi.

2        51.    The market for the manufacture and sale of TFT-LCD Products is subject to high

3    manufacturing and technological barriers to entry, some of which are described in Samsung's

4    own November 3, 2005 "Market Perspective & Strategy" presentation available at its website.

5    (<http: //www. samsung. com/AboutSAMSUNG/ELECTRONICSGLOBAL/InvestorRelatio

6    ns/IREventsPresentations/AnalystDay/index.htm > .)  Efficient fabrication plants are large and

7    costly.  TFT-LCD Products are also subject to technological advances, so that firms within the

8    industry must undertake significant research and development expenses.

9        52.    The TFT-LCD Products industry has also been subject to significant consolidation

10    during the Class Period, as reflected in AU Optronics' recent acquisition of Quanta Display, the

11    creation in 2001 of AU Optronics itself through the merger of Acer Display and Unipac

12    Optoelectronics, and Fujitsu Limited's transfer of its LCD business to Sharp in 2005.

13        53.    Defendants sell their TFT-LCD Products through various channels including to

14    manufacturers of electronic products and devices, and to resellers of TFT-LCD Products. These

15    electronic products and devices and TFT-LCD Products are then sold, directly or indirectly, to

16    consumers and are not altered during the course of sale.

17        54.    California is the largest market in the world for TFT-LCD Products and is the

18    worldwide center of the PC industry and other industries that depend upon the TFT-LCD

19    Products market. Statements concerning the prices and market conditions for TFT-LCD Products

20    were disseminated by Defendants from and into California on a regular and continuous basis.

21                        **DEFENDANTS' ILLEGAL CONDUCT**

22        55.    Defendants and their co-conspirators have engaged in a contract, combination,

23    trust or conspiracy, the effect of which was to raise the prices at which they sold TFT-LCD

24    Products to artificially inflated levels from at least January 1, 1998 through at least December 31,

25    2005.

26        56.    Very recently, antitrust enforcement authorities in a number of multiple countries

27    have begun investigating this unlawful cartel. On December 11, 2006, Defendant LG.Philips, in

28    its Form 6-K filed with the SEC, stated the following:

1
2
3
4

> Last Friday, as part of an investigation of possible anticompetitive conduct in the LCD industry, officials from the Korean Fair Trade Commission (KFTC) visited the offices of LG.Philips LCD in Seoul Korea. In addition, the Japanese Fair Trade Commission (JFTC) issued a notice to our offices, in Tokyo, Japan and the United States Department of Justice (DOJ) issued a subpoena to our offices in San Jose, California.

5  (<http://www.lgphilips-lcd.com/homeContain/jsp/eng/inv/inv200Jj_e.jsp> .)

6        57.    On December 11, 2006, the Reuters news agency reported the following:

7
8
9

> Samsung Electronics Co. Ltd. (005930.KS) is being investigated by fair trade watchdogs in South Korea, Japan and the United States, the second Korean flat screen maker named in a probe into possible price-fixing, a news agency report said on Tuesday.

10
11
12

> The report, from South Korea's Yonhap news agency, follows a disclosure by LG.Philips LCD Co. Ltd. (034220.KS) on Monday that it was the target of an investigation by the Korean Fair Trade Commission (KFTC), the Japanese Fair Trade Commission (JFTC) and had received a subpoena from the U.S. Department of Justice ...

13
14
15

> Yonhap cited unnamed regulatory and industry sources in reporting local antitrust authorities were also looking into possible collusion by Samsung and LG.Philips to fix the prices of LCD products and control their supply ...

16

> Late on Monday, a KFTC spokesman said the probe was being conducted by the Cartel Investigation Group.

17  (<http://business. scotsman.com/latest.cfm?id =1843512006 > . )

18        58.    On December 12, 2006, other companies, including AU Optronics, Sharp, and

19  Epson Imaging, revealed they were under investigation as follows:

20              a.    According to one report, "'[t]he subject of the probe is price fixing,'

21  Akinori Yamada, a director of management and planning at Japan's Fair Trade

22  Commission, said in Tokyo today. He said LG.Philips and Samsung were being

23  questioned, although he declined to name or give the number of the other companies

24  being investigated. In Washington, U.S. Justice Department spokeswoman Gina

25  Talamona said the agency `is investigating the possibility of anticompetitive practices'

26  and is cooperating with foreign authorities."

27  (<http://www.bloomberg.comlapps/news?pid =20601080&sid =aSF7WY69eUPg&refer

28  = a sia> .) Another report indicated that "Min Chun Hong, an analyst at Goodmorning

CLASS ACTION COMPLAINT

1    Shinhan Securities, said that if the companies [Samsung and LG-Philips] were convicted,

2    penalties could amount to about 200 billion won, or $216 million, each."

3    (<http://www.iht.com/ articles /2006/12/ 12 /busines s/ flat . php > .)

4          b.      Michael Min, an analyst at Korea Investment and Securities, has been

5    quoted as saying that the investigation may be focused on a period over the last several

6    years when manufacturers of TFT-LCD Products were charging comparable prices.

7    (<http: //www. washingtonpost.com/wp-dyn/content/article/2006/12/12/

8    AR2006121200260.html> .)

9          c.      There are also other indications that Defendants have engaged in collusive

10   activity. A "Crystal Cycle" is an industry term that refers to shortages in the supply-and-

11   demand cycle for LCD displays. A recent article in Infoworld (available at

12   <http://www.infoworld.comlarticle/06/06/13/79145_25OPreality_l.html>) cited Chris

13   Connery, an industry analyst at DisplaySearch, as follows: "[a]ccording to Connery, the

14   talk in the industry is that the manufacturers are looking to create an artificial Crystal

15   Cycle. At a recent conference in Taiwan, a leading producer of LCD glass stated publicly

16   that the industry should collectively look at cutting back on production from 100 percent

17   to at least 85 percent. Otherwise, if supply outpaces demand, manufacturers will be

18   forced to cut prices. ... Will the mother-glass manufacturers actually create this artificial

19   shortage? `The chatter is growing louder each day,' Connery says." A subsequent

20   Infoworld article

21   (<http://www.infoworld.comlarticle/06/06/12/79223_HNphilipscutslcd_l.html > ) noted

22   that the unnamed Taiwanese executive came from AU Optronics.

23          d.      Similarly, Samsung's presentation described above noted that "it was

24   possible to secure a reasonable amount of profit while following the industry leaders"

25   during the Class Period.

26   59.     Defendants, through their officers, directors and employees, effectuated the

27   aforesaid contract, combination, trust or conspiracy between themselves and their co-

28   conspirators by, among other things:

a.    participating in meetings and conversations, including through various trade associations and committees, to discuss the prices of TFT-LCD Products in the United States;

b.    agreeing, during those meetings and conversations, to charge prices at specified levels and otherwise to increase and maintain prices of TFT-LCD Products sold in the United States;

c.    issuing price announcements and quotations in accordance with the agreements reached; and

d.    selling TFT-LCD Products to various customers in the United States at non-competitive prices.

60.    Defendants' contract, combination, trust or conspiracy was centered in, carried out, effectuated and perfected mainly in the State of California. Therefore, all members of the Class, whether or not California residents, are entitled to recover under California law, as well as the laws of their own states.

## ACTIVE CONCEALMENT

61.    Throughout and beyond the conspiracy, Defendants and their co-conspirators affirmatively and actively concealed their unlawful conduct from Plaintiff. Defendants and their co-conspirators conducted their conspiracy in secret and kept it mostly within the confines of their higher-level executives. Defendants and their co-conspirators publicly provided pretextual and false justifications regarding their price increases. Defendants and their co-conspirators conducted their conspiracy in secret, concealed the true nature of their unlawful conduct and acts in furtherance thereof, and actively concealed their activities through various other means and methods to avoid detection. Plaintiff did not discover, and could not have discovered through the exercise of reasonable diligence, that Defendants and their co-conspirators were violating the antitrust laws as alleged herein until shortly before this class action litigation was commenced.

62.    As a result of the active concealment of the conspiracy by Defendants and their co-conspirators, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

CLASS ACTION COMPLAINT

## VIOLATIONS ALLEGED

### First Claim for Relief

### (Violation of Section 1 of the Sherman Act)

63.   Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

64.   Beginning at a time presently unknown to Plaintiff, but at least as early as January 1, 1998 and continuing through December 31, 2005, the exact dates being unknown to Plaintiff, Defendants and their co-conspirators entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, and/or stabilize prices for TFT-LCD Products in the United States, in violation of 2 Section 1 of the Sherman Act (15 U.S.C. §1).

65.   In formulating and carrying out the alleged agreement, understanding, and conspiracy, the Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices, and course of 6 conduct set forth above, and the following, among others:

      a.    to fix, raise, maintain and stabilize the price of TFT-LCD Products;

      b.    to allocate markets for TFT-LCD Products among themselves;

      c.    to submit rigged bids for the award and performance of certain TFT-LCD Products contracts; and

      d.    to allocate among themselves and collusively reduce the production of TFT-LCD Products.

66.   The combination and conspiracy alleged herein has had the following 14 effects, among others:

      a.    price competition in the sale of TFT-LCD Products has been restrained, suppressed, and/or eliminated in the United States;

      b.    prices for TFT-LCD Products sold by Defendants and their co-conspirators have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout the United States; and

CLASS ACTION COMPLAINT

c. those who purchased TFT-LCD Products directly or indirectly from Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

67. Plaintiff has been injured and will continue to be injured in his business and property by paying more for TFT-LCD Products purchased indirectly from the Defendants and their co-conspirators than he would have paid and will pay in the absence of the combination and conspiracy, including paying more for personal computers and other products in which TFT-LCD Products are a component as a result of higher prices paid for TFT-LCD Products by the manufacturers of those products.

68. Plaintiff and the Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

### Second Claim for Relief

### (Violation of the California Cartwright Act)

69. Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

70. Defendants' contract, combination, trust or conspiracy was centered in, carried out, effectuated and perfected mainly within the State of California, and Defendants' conduct within California injured Plaintiff and all members of the Class in California and throughout the United States. Therefore, this claim for relief under California law is brought on behalf of all members of the Class, whether or not they are California residents.

71. Beginning at a time presently unknown to Plaintiff, but at least as early as January 1, 1998, and continuing thereafter at least up to December 31, 2005, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720, California Business and Professions Code. Defendants, and each of them, have acted in violation of Section 16720 to fix, raise, stabilize and maintain prices of, and allocate markets for, TFT-LCD Products at supra-competitive levels.

72. The aforesaid violations of Section 16720, California Business and Professions

CLASS ACTION COMPLAINT

1  Code, consisted, without limitation, of a continuing unlawful trust and concert of action among

2  the Defendants and their co-conspirators, the substantial terms of which were to fix, raise,

3  maintain and stabilize the prices of, and to allocate markets for, TFT¬LCD Products.

4        73.    For the purpose of forming and effectuating the unlawful trust, the Defendants

5  and their co-conspirators have done those things which they combined and conspired to do,

6  including but in no way limited to the acts, practices and course of conduct set forth above and

7  the following:

8              a.     to fix, raise, maintain and stabilize the price of TFT-LCD Products;

9              b.     to allocate markets for TFT-LCD Products amongst themselves;

10             c.     to submit rigged bids for the award and performance of certain TFT¬LCD

11    Products contracts; and

12             d.     to allocate amongst themselves the production of TFT-LCD Products.

13       74.    The combination and conspiracy alleged herein has had, inter alia, the following

14  effects:

15             a.     price competition in the sale of TFT-LCD Products has been restrained,

16    suppressed and/or eliminated in the State of California and throughout the United States;

17             b.     prices for TFT-LCD Products sold by Defendants and their co-

18    conspirators have been fixed, raised, maintained and stabilized at artificially high, non-

19    competitive levels in the State of California and throughout the United States; and

20             c.     those who purchased TFT-LCD Products from Defendants and their

21    co-conspirators have been deprived of the benefit of free and open competition.

22       75.    Plaintiff and the other members of the Class paid supra-competitive, artificially

23  inflated prices for TFT-LCD Products.

24       76.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and

25  the members of the Class have been injured in their business and property in that they paid more

26  for TFT-LCD Products than they otherwise would have paid in the absence of Defendants'

27  unlawful conduct. As a result of Defendants' violation of Section 16720 of the California

28  Business and Professions Code, Plaintiff seeks treble damages and the costs of suit, including

1    reasonable attorneys' fees, pursuant to Section 16750(a) of the California Business and

2    Professions Code.

3                              **Third Claim for Relief**

4                    **(Violation of the California Unfair Competition Law)**

5         77.    Plaintiff incorporates and realleges, as though fully set forth herein, each and

6    every allegation set forth in the preceding paragraphs of this Complaint.

7         78.    Defendants' business acts and practices were centered in, carried out, effectuated

8    and perfected mainly within the State of California, and Defendants' conduct within California

9    injured all members of the Class throughout the United States. Therefore, this claim for relief

10   under California law is brought on behalf of all members of the Class, whether or not they are

11   California residents.

12        79.    Beginning on a date unknown to Plaintiff, but at least as early as January 1, 2002,

13   and continuing thereafter at least up through December 31, 2005, Defendants committed and

14   continue to commit acts of unfair competition, as defined by Sections 17200, et seq. of the

15   California Business and Professions Code, by engaging in the acts and practices specified above.

16        80.    This Claim is instituted pursuant to Sections 17203 and 17204 of the California

17   Business and Professions Code, to obtain restitution from these Defendants for acts, as alleged

18   herein, that violated Section 17200 of the California Business and Professions Code, commonly

19   known as the Unfair Competition Law.

20        81.    The Defendants' conduct as alleged herein violated Section 17200. The acts,

21   omissions, misrepresentations, practices and non-disclosures of Defendants, as alleged herein,

22   constituted a common continuous and continuing course of conduct of unfair competition by

23   means of unfair, unlawful and/or fraudulent business acts or practices within the meaning of

24   California Business and Professions Code, Section 17200, et seq., including, but not limited to,

25   the following:

26              a.    the violations of Section 1 of the Sherman Act, as set forth above;

27              b.    the violations of Section 16720, et seq., of the California Business and

28         Professions Code, set above;

CLASS ACTION COMPLAINT

1           c.     Defendants' acts, omissions, misrepresentations, practices and non-

2    disclosures, as described above, whether or not in violation of Section 16720, et seq. of

3    the California Business and Professions Code, and whether or not concerted or

4    independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent;

5           d.     Defendants' act and practices are unfair to consumers of TFT-LCD

6    Products in the State of California and throughout the United States, within the meaning

7    of Section 17200, California Business and Professions Code; and

8           e.     Defendants' acts and practices are fraudulent or deceptive within the

9    meaning of Section 17200 of the California Business and Professions Code.

10        82.    Plaintiff and each of the Class members are entitled to full restitution and/or

11    disgorgement of all revenues, earnings, profits, compensation and benefits which may have been

12    obtained by Defendants as a result of such business acts or practices.

13        83.    The illegal conduct alleged herein is continuing and there is no indication that

14    Defendants will not continue such activity into the future.

15        84.    The unlawful and unfair business practices of Defendants, and each of them, as

16    described above, have caused and continue to cause Plaintiff and the members of the Class to

17    pay supra-competitive and artificially-inflated prices for TFT-LCD Products. Plaintiff and the

18    members of the Class suffered injury in fact and lost money or property as a result of such unfair

19    competition.

20        85.    The conduct of Defendants as alleged in this Complaint violates Section 17200 of

21    the California Business and Professions Code.

22        86.    As alleged in this Complaint, Defendants and their co-conspirators have been

23    unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition.

24    Plaintiff and the members of the Class are accordingly entitled to equitable relief including

25    restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits

26    which may have been obtained by Defendants as a result of such business practices, pursuant to

27    the California Business and Professions Code, Sections 17203 and 17204.

28    **Fourth Claim for Relief**

CLASS ACTION COMPLAINT

1          **(Violation of State Antitrust and Unfair Competition Laws)**

2          87.     Plaintiff incorporates and realleges, as though fully set forth herein, each and

3    every allegation set forth in the preceding paragraphs of this Complaint.

4          88.     By reason of the foregoing, Defendants have entered into agreements in restraint

5    of trade in violation of Alabama Code §§8-10-1 et seq.

6          89.     By reason of the foregoing, Defendants have entered into agreements in restraint

7    of trade in violation of Arizona Revised Stat. §§44-1401 et seq.

8          90.     By reason of the foregoing, Defendants have entered into agreements in restraint

9    of trade in violation of California Bus. & Prof. Code §§16700 et seq. and Cal. Bus. & Prof. Code

10   §§17200 et seq.

11         91.     By reason of the foregoing, Defendants have entered into agreements in restraint

12   of trade in violation of District of Columbia Code Ann. §§28-4503 et seq.

13         92.     By reason of the foregoing, Defendants have entered into agreements in restraint

14   of trade in violation of Iowa Code §§553.1 et seq.

15         93.     By reason of the foregoing, Defendants have entered into agreements in restraint

16   of trade in violation of Kansas Stat. Ann. §§50-101 et seq.

17         94.     By reason of the foregoing, Defendants have entered into agreements in restraint

18   of trade in violation of Maine Rev. Stat. Ann. 10, §§1101 et seq.

19         95.     By reason of the foregoing, Defendants have entered into agreements in restraint

20   of trade in violation of Michigan Comp. Laws. Ann. §§445.773 et seq.

21         96.     By reason of the foregoing, Defendants have entered into agreements in restraint

22   of trade in violation of Minnesota Stat. §§325D.52 et seq.

23         97.     By reason of the foregoing, Defendants have entered into agreements in restraint

24   of trade in violation of Mississippi Code Ann. §75-21-1 et seq.

25         98.     By reason of the foregoing, Defendants have entered into agreements in restraint

26   of trade in violation of Nebraska Rev. Stat. §§59-801 et seq.

27         99.     By reason of the foregoing, Defendants have entered into agreements in restraint

28   of trade in violation of Nevada Rev. Stat. Ann. §§598A et seq.

100.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §§57-1-1 et seq.

101.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Carolina Gen. Stat. §§75-1 et seq.

102.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Dakota Cent. Code §§51-08.1-01 et seq.

103.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of the Pennsylvania common law.

104.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of South Dakota Codified Laws Ann. §§37-1 et seq.

105.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§47-25-101 et seq.

106.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Vermont Stat. Ann. 9 §§2453 et seq.

107.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of West Virginia §§47-18-1 et seq.

108.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§133.01 et seq.

109.    Class Members in each of the states listed above paid supra-competitive, artificially inflated prices for TFT-LCD Products. As a direct and proximate result of Defendants' unlawful conduct, such members of the Class have been injured in their business and property in that they paid more for TFT-LCD Products than they otherwise would have paid in the absence of Defendants' unlawful conduct.

### Fifth Claim for Relief

### (Violation of State Consumer Protection and Unfair Competition Laws)

110.    Plaintiff incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

111.    Defendants engaged in unfair competition or unfair, unconscionable, deceptive or

fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

112.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. §§45.50.471 et seq.

113.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Arkansas Code §4-88-101 et seq.

114.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of California Bus. & Prof. Code §17200 et seq.

115.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of District of Columbia Code §28-3901 et seq.

116.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Florida Stat. §501.201 et seq.

117.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Hawaii Rev. Stat. §480 et seq.

118.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Idaho Code §48-601 et seq.

119.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Kansas Stat. §50-623 et seq.

120.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Louisiana Rev. Stat. §51:1401 et seq.

121.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 5 Maine Rev. Stat. §207 et seq.

122.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Montana Code §30-14-101 et seq.

123.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Nebraska Rev. Stat. §59-1601 et seq.

124.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. §57-12-1 et seq.

125.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New York Gen. Bus. Law §349 et seq.

126.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina Gen. Stat. §75-1.1 et seq.

127.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Oregon Rev. Stat. §646.605 et seq.

128.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Rhode Island Gen. Laws. §6-13.1-1 et seq.

129.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of South Carolina Code Laws §39-5-10 et seq.

130.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code §13-11-1 et seq.

131.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 9 Vermont §2451 et seq.

132.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of West Virginia Code §46A-6-101 et seq.

133.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Wyoming Stat. §40-12-105.

134.    Class Members in the states listed above paid supra-competitive, artificially inflated prices for TFT-LCD Products. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the members of the Class have been injured in their business and property in that they paid more for TFT-LCD Products than they otherwise would have paid in the absence of Defendants' unlawful conduct.

### Sixth Claim for Relief

**(Unjust Enrichment and Disgorgement of Profits)**

135.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

136.    Defendants have been unjustly enriched through overpayments by Plaintiff and

1    Class members and the resulting profits.

2         137.    Under common law principles of unjust enrichment, Defendants should not be

3    permitted to retain the benefits conferred via overpayments by Plaintiff and Class members.

4         138.    Plaintiff seek disgorgement of all profits resulting from such overpayments and

5    establishment of a constructive trust from which Plaintiff and Class members may seek

6    restitution.

7                              **PRAYER FOR RELIEF**

8         WHEREFORE, Plaintiff prays:

9         1.    That the Court determine that the Sherman Act, state antitrust law, and state

10   consumer protection and/or unfair competition law claims alleged herein may be maintained as a

11   class action under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure;

12        2.    That the unlawful conduct, contract, conspiracy or combination alleged herein be

13   adjudged and decreed to be:

14             a.    A restraint of trade or commerce in violation of Section 1 of the Sherman

15        Act, as alleged in the First Claim for Relief;

16             b.    An unlawful combination, trust, agreement, understanding, and/or concert

17        of action in violation of the state antitrust laws identified in the Second and Fourth

18        Claims for Relief herein;

19             c.    Violations of the state consumer protection and unfair competition laws

20        identified in the Third and Fifth Claims for Relief herein; and

21             d.    Acts of unjust enrichment as set forth in the Sixth Claim for Relief

22        herein.

23        3.    That Plaintiff and the Class recover damages, as provided by federal and state

24   antitrust laws, and that a joint and several judgment in favor of Plaintiff and the Class be entered

25   against the Defendants in an amount to be trebled in accordance with such laws;

26        4.    That Defendants, their affiliates, successors, transferees, assignees, and the

27   officers, directors, partners, agents, and employees thereof, and all other persons acting or

28   claiming to act on their behalf, be permanently enjoined and restrained from in any manner: (1)

CLASS ACTION COMPLAINT

1  continuing, maintaining, or renewing the conduct, contract, conspiracy or combination alleged

2  herein, or from entering into any other conspiracy alleged herein, or from entering into any other

3  contract, conspiracy or combination having a similar purpose or effect, and from adopting or

4  following any practice, plan, program, or device having a similar purpose or effect; and (2)

5  communicating or causing to be communicated to any other person engaged in the sale of TFT-

6  LCD Products, information concerning bids of competitors;

7    5. That Plaintiff be awarded restitution, including disgorgement of profits obtained

8  by Defendants as a result of their acts of unfair competition and acts of unjust enrichment;

9    6. That Plaintiff and members of the Class be awarded pre- and post-judgment

10  interest, and that that interest be awarded at the highest legal rate from and after the date of

11  service of the initial complaint in this action;

12    7. That Plaintiff and members of the Class recover their costs of this suit, including

13  reasonable attorneys' fees as provided by law; and

14    8. That Plaintiff and members of the Class have such other, further, and different

15  relief as the case may require and the Court may deem just and proper under the circumstances.

16

17  DATED:  June ____, 2007    LAW OFFICES OF LINGEL H. WINTERS

18              A PROFESSIONAL CORPORATION

19

20          By:  _____

21            LINGEL H. WINTERS

          LAW OFFICES OF LINGEL H. WINTERS

22            A PROFESSIONAL CORPORATION

          One Maritime Plaza, Suite 400

23            San Francisco, CA  94111

          Telephone: (415) 398-2941

24            Facsimile: (415) 393-9887

25

26

27

28

1

### JURY TRIAL DEMAND

2        Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial

3    by jury for all issues so triable.

4
                        MAY 29
5    DATED: June ____, 2007

6                                              LAW OFFICES OF LINGEL H. WINTERS
                                               A PROFESSIONAL CORPORATION
7

8                                              By: _____
                                                   LINGEL H. WINTERS
9                                                  LAW OFFICES OF LINGEL H. WINTERS
                                                   A PROFESSIONAL CORPORATION
10                                                 One Maritime Plaza, Suite 400
                                                   San Francisco, CA  94111
11                                                 Telephone:    (415) 398-2941
                                                   Facsimile:    (415) 393-9887
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT